**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>ONE 2 ONE COMMUNICATIONS, LLC<br>Debtor<br>_____<br><br>QUAD/GRAPHICS, INC.<br>Appellant,<br><br>v.<br><br>ONE2ONE COMMUNICATIONS, LLC<br>Appellee | Civil Action No.: 13-1675 (JLL)<br><br><br><br><br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of an appeal by Quad/Graphics Inc. ("Quad" or "Appellant") of United States Bankruptcy Judge Novalyn Winfield's March 5, 2013 Order confirming the Debtor's Fourth Amended Chapter 11 Plan of Reorganization. On June 7, 2013, One2One Communications, LLC ("One2One" or "Reorganized Debtor") filed a motion to dismiss this appeal, arguing that it is equitably moot (CM/ECF No. 34), which Appellant opposed (CM/ECF No. 36). For the reasons set forth below, the Court dismisses the instant appeal as equitably moot.

## I. BACKGROUND

As the Court writes only for the parties, it will assume a familiarity with the facts and will not recount same in detail except as necessary for the instant discussion. The Debtor describes itself as "a limited liability company formed in 2003," which "is a full

1

service, end-to-end print and electronic billing statement and letter supplier." (CM/ECF No. 32, 2) ("One2One Br."). Appellant Quad holds the largest claim against the Debtor, for $9,359,630.91, which stems from a judgment entered against One2One Communications, LLC and the Debtor's CEO, Bruce Heverly in the United States District Court, Eastern District of Wisconsin. That judgment is currently on appeal before the Seventh Circuit Court of Appeals.

On July 10, 2012, the Debtor filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the District of New Jersey. Quad asserts that the Debtor filed for bankruptcy in order to stay execution of Quad's judgment against it. One2One asserts that in addition to the protracted dispute with Appellant in the Eastern District of Wisconsin, it filed bankruptcy because the global economic downturn compounded the difficulties in the industry caused by the emergence of electronic communications as a preferred method of billing.

The Office of the United States Trustee (the "U.S. Trustee") formed an official unsecured creditors committee on July 31, 2012, which consisted of Quad, Ricoh Production Print Solutions, LLC, and Enterprise Group. Quad submits that its claim represents almost 90% of the amount of unsecured claims.

The Debtor filed a First Amended Plan of Reorganization and accompanying disclosure statement on September 21, 2012. After extensive hearings, United States Bankruptcy Judge Novalyn Winfield denied confirmation of the First Amended Plan of Reorganization, in part, due to her findings regarding the "absolute priority rule."

After previous failed attempts to seek investors, Béla Szigethy ("Szigethy"), the founder, co-owner, and co-CEO of a global private equity firm holding over $3 billion in assets, decided to invest in the Debtor.  Neither the Debtor nor its principals had a previous financial relationship with Szigethy or his company.

The Debtor filed a Fourth Amended Plan of Reorganization on January 25, 2013 (the "Plan") under which a third-party, One2One Holdings, LLC ("Plan Sponsor") would acquire membership interest in the Reorganized Debtor.  After holding a five-day hearing, and over the objection of Quad, Judge Winfield entered an Order confirming the Fourth Amended Chapter 11 Plan of Reorganization on March 5, 2013 ("Confirmation Order").  The Bankruptcy Court's Order was automatically stayed for fourteen days pursuant to Bankruptcy Rule 3020(e).

Appellant made an application for a stay pending appeal, which Judge Winfield also denied on March 5, 2013.  However, the Bankruptcy Court also denied a request by the Debtor to shorten the automatic stay of fourteen days afforded by Federal Rule of Bankruptcy Procedure 3020(e).

Appellant's Emergent Applications

On March 18, 2013, Appellant filed Notices of Appeal from the Bankruptcy Court's Confirmation Order and the Bankruptcy Court's Order denying Quad's motion for a stay pending appeal.  On March 19, 2013, the final day of the automatic stay, Quad filed an emergent application pursuant to Federal Rule of Bankruptcy Procedure 8005 seeking to temporarily stay Judge Winfield's Confirmation Order, and requesting that the Court order Appellees to show cause as to why a stay pending appeal should not issue.

Once this Court denied Quad's application, Quad appealed that decision to the Third

Circuit, which upheld the denial of the stay.  Appellant subsequently sought injunctive

relief from this Court, which was denied pursuant to the law of the case doctrine.

Consummation of the Plan

Meanwhile, after the expiration of all applicable stays, the Plan became

"effective" on March 21, 2012.  As described in the Declaration of Bruce Heverly, the

Reorganized Debtor implemented the following:

- The Reorganized Debtor commenced distributions under the Plan to the holders of Allowed Claims, making (i) the first two quarterly distributions to general unsecured creditors, (ii) five payments to holders of allowed Section 503(b)(9) administrative claims and (iii) payments exceeding $300,000 on account of outstanding professional fees allowed pursuant to final fee awards.

- The Reorganized Debtor closed on the restructuring transactions contemplated by the Plan Support Agreement, canceling the existing membership interests and issuing the membership interest in the reorganized One2One to the Plan Sponsor.

- The Reorganized Debtor adopted and filed certain governance documents, including an amended and restated operating agreement, which became effective on the Effective Date.

- A new board of members assumed managerial oversight of the Reorganized Debtor, held its first meeting on March 21, 2013, and (among other things) elected a new Chairman.

- The Reorganized Debtor hired a new Vice President of Finance & Administration, who will be responsible for the supervision of the Reorganized Debtor's financial affairs.

- The Reorganized Debtor has completed, entered into or effectuated numerous additional business transactions and activities in reliance on the confirmed Plan.

- The Reorganized Debtor has assumed all executory contracts and unexpired leases not previously rejected.

- The Reorganized Debtor has entered into new agreements and renewed expiring contracts with various customers and vendors.

(One2One Mot. 8-9).

## II. JURISDICTION and LEGAL STANDARD

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 157(b).  This Court has jurisdiction under 28 U.S.C. § 158(a).  A district court sits as an appellate court to review a bankruptcy court.  Therefore, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*.  *In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 816 (3d Cir. 2010); *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995).

## III. DISCUSSION

Quad asserts that the Bankruptcy Court erred in the following primary ways: (1) the Plan and the Debtor did not comply with applicable provisions of the Bankruptcy Code as required by 11 U.S.C. §§ 1129(a)(1) and (2)[1]; (2) the Plan did not meet the requirements of 11 U.S.C. § 1129(b)[2]; (3) the Plan did not meet the requirement of 11 U.S.C. § 1129(a)(7); (4) the Plan did not comply with 11 U.S.C. §§ 1129(a)(3) or (a)(11); and (5) the Bankruptcy Court denied Appellant due process, expedited the hearings

---

[1] With regard to the first argument, Appellant asserts that: (1) the Plan did not provide for cure of defaults under executory contracts prior to the Debtor's assumption of contracts, as required by section 365 of the Bankruptcy Code; (2) the Plan did not comply with the provisions of the Bankruptcy Code limiting discharge because it improperly included releases and injunctions in favor of third parties; (3) the Plan's classification and treatment of Ricoh's claim did not comply with sections 506(b) or 1122(a) of the Bankruptcy Code since Ricoh's claim was not fully secured; and (4) the Plan's treatment of creditor Bell & Howell's Claim as an executory contract did not comply with sections 365 or 1122(a) of the Bankruptcy Code.

[2] Quad argues that the Bankruptcy Court erred because the Plan was not fair and equitable as required by sections 1129(b)(1) and 1129(b)(2)(A)-(B).

related to the Plan without sufficient cause, and allowed the debtor to violate the

Bankruptcy Rules and Rules of Evidence to the prejudice of Appellant. (CM/ECF No.

29) ("Appellant Br.").[3]

Unsurprisingly, Appellee argues that the errors to which Appellant points do not

amount to clear error. (Appellee Br. 30-48). Appellee also argues that the Bankruptcy

Court did not deny Appellant due process, and that the issue is waived because Appellant

failed to raise it before the Bankruptcy Court. (Appellee Br. 48-50).

In addition, as discussed above, One2One moved to dismiss the instant Appeal

with prejudice pursuant to the doctrine of equitable mootness, which Appellant opposed.[4]

The Court will begin its analysis with that issue, as it may be determinative of the instant

matter.

### A.  Constitutionality of the Doctrine

As an initial matter, in opposition to the instant motion, Appellant argues at length

that the doctrine of equitable mootness is unconstitutional because it vests non-Article III

courts with the ability to render final non-appealable orders. (Quad Opp'n. 17-22).

Appellant makes two primary arguments: (1) an Article III Court cannot decline to

review a bankruptcy appeal; and (2) the doctrine of equitable mootness exceeds the

Court's judicial functions. Notably, however, in support of those arguments Appellant

points to no controlling precedent on point.

---

[3] The Court notes, for the sake of completeness, that it struck Appellant's previous brief. (CM/ECF Nos. 27-28). Accordingly, the operative brief is docket entry number 29.

[4] The Court notes that despite having submitted numerous letters to the Court regarding the applicable form and length of briefs in this matter, Quad's Opposition does not contain a table of contents or table of cases.

In Reply, One2One submits that "Appellant challenges the viability of the equitable mootness doctrine, ignoring that equitable mootness has been endorsed by *all* twelve Circuit Courts with jurisdiction to hear bankruptcy appeals.  Indeed, in light of that broad consensus, the Supreme Court has often, including as recently as this Term, denied petitions seeking to eviscerate the doctrine."  (One2One Reply 1, *see also* 6-8) (emphasis in original).

Appellant is correct in arguing that "when the equitable mootness doctrine is applied to a bankruptcy appeal, the appellate court does not decide the merits of the appeal notwithstanding its jurisdiction to hear an appeal."  (Quad Opp'n. 10).  "Equitable mootness is a way for an appellate court to avoid deciding the merits of an appeal," whereby "a court dismisses an appeal even if it has jurisdiction and can grant relief if 'implementation of that relief would be inequitable.'"  *In re Phila. Newspapers, LLC.*, 690 F.3d 161, 168 (3d Cir. 2012) (quoting *In re Cont'l Airlines*, 91 F.3d 533, 559 (3d Cir. 1996) (en banc) ("*Continental I*")).  However, in the face of robust controlling precedent to the contrary, this Court declines to find the doctrine of equitable mootness unconstitutional.

## B. The Scope of the Doctrine

Appellant argues at length that this Court should not expand the doctrine of equitable mootness beyond the Third Circuit's limited application of the doctrine to large, complex Chapter 11 reorganizations.  Quad urges that the underlying bankruptcy case at issue here was neither large nor complex and that the doctrine should only apply to complicated reorganizations with intricate transactions.  (Quad Opp'n. 10-17).  However,

7

the Third Circuit has expressly set forth the applicable analysis, discussed below, which

takes the complexity of the plan into account.  "Taken together, these factors recognize

that a court only should apply the equitable mootness doctrine if doing so will

'[unscramble] complex bankruptcy reorganizations when the appealing party should have

acted before the plan became extremely difficult to retract.'"  *In re Phila. Newspapers*,

690 F.3d at 169-170 (quoting *Nordhoff Invs. Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 85

(3d Cir. 2001)).  For example, a court considers whether the plan has been substantially

consummated and whether the relief requested would affect the success of the plan or the

rights of third parties.  *See Phila.* Newspapers, 907 F.3d at 170.  Accordingly, the Court

will consider the issue of whether equitable mootness applies here within the framework

dictated by relevant controlling authority.

## C.  Application of the Doctrine[5]

In *In re Continental Airlines*, the Third Circuit applied the doctrine of equitable

mootness and stated that a bankruptcy appeal should be dismissed as moot where "even

though effective relief could conceivably be fashioned, implementation of that relief

would be inequitable."[6] 91 F.3d at 559 (quotations omitted). "The equitable mootness

---

[5] In its Opposition, Quad argues that the Court should strike the Declaration of Bruce Heverly because it is not based on facts or other admissible evidence.  On the other hand, One2One urges that it is admissible under Fed. R. Evid. 701, which permits opinion testimony by lay witnesses under certain circumstances. (One2One Reply 19-21) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993); *Duluth Lighthouse for the Blind v. CG Bretting Mfg. Co.*, 199 F.R.D. 320, 325-26 (D. Minn. 2000)). In this instance, the Declaration by Bruce Heverly is based on his personal and professional experience as the Chief Executive Officer of the reorganized debtor, his personal knowledge of the reorganized debtor's business and financial affairs, and his extensive experience in the industry.  (CM/ECF No. 34, ¶¶ 1-3). Accordingly, the Court denies Quad's request to strike down the Declaration of Bruce Heverly.

[6] The term "equitable mootness" may be misleading in that an analysis under the doctrine does not really focus on whether a case is moot in the traditional sense, but on whether it is prudent for the Court to upset the plan of reorganization at that time. *See Continental I,* 91 F.3d at 559. However, the Third Circuit, while

8

doctrine recognizes that if a successful appeal would be fatal to a plan, prudence may require the appeal be dismissed because granting relief to the appellant 'would lead to a perverse outcome.'" *In re Phila. Newspapers*, 690 F.3d at 168 (quoting *United States Tr. v. Official Comm. of Equity Sec. Holders (In re Zenith Elecs. Corp.)*, 329 F.3d 338, 343 (3d Cir. 2003). In this context, "[a] 'perverse outcome' often involves injury to third parties, particularly investors, who have relied on the confirmed plan, or the potential for chaos in the bankruptcy court." *Id.* (internal citations omitted). "Mootness" is used "as a shortcut for a court's decision that *the fait accompli* of a plan confirmation should preclude further judicial proceedings." *Id.* (quoting *Continental I*, 91 F.3d at 559). The scope of the doctrine is limited and it should be applied cautiously. *Continental I*, 91 F.3d at 559.

A court considers the following factors to determine whether it would be prudent to upset a plan of reorganization after its confirmation:

> (1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments.

*Continental I,* 91 F.3d at 560. "These factors are given varying weight, depending on the particular circumstances." *In re PWS Holding Corp.,* 228 F.3d 224, 236 (3d Cir. 2000); *accord In re Phila. Newspapers*, 690 F.3d at 168.

---

noting this issue, has used this term as have the parties in this matter. *See id.* ("It is evident that 'equitable mootness' is an inapt description of the doctrine at issue here. Nonetheless, since past cases have used that term, we use it in discussing them."); *see also Nordhoff Invs., Inc. v. Zenith Elec. Corp.,* 258 F.3d 180,184-85 (3d Cir. 2001) (discussing the doctrine of equitable mootness and using such term). Thus, the Court will do so here.

*a. Substantial Consummation*

Whether the plan has been substantially consummated, is typically "the foremost consideration." *In re PWS Holding Corp.,* 228 F.3d 224, 236 (3d Cir. 2000); *Continental I*, 91 F.3d at 560-61. This factor "requires that a court consider whether allowing an appeal to go forward will undermine the plan, and not merely whether the plan has been substantially consummated under the Bankruptcy Code's definition." *In re Phila. Newspapers*, 690 F.3d at 168-169. Under the Bankruptcy Code, "substantial consummation" is: "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).

Here, the Reorganized Debtor argues that "it is irrefutable that the confirmed Plan has been substantially consummated." (One2One Mot. 2). In support of that assertion, One2One makes the following primary arguments: (1) the Plan has been substantially consummated within the meaning of Section 1101(2) of the Bankruptcy Code; and (2) granting the relief requested by the appellant would undermine the consummated Plan. With regard to Section 1101(2) of the Bankruptcy Code, One2One points to the following specific actions undertaken:

> Pursuant to the Plan, on or shortly after the Effective Date [], the
> Reorganized Debtor commenced distributions to creditors, including the
> Appellant; completed irrevocable restructuring transactions that
> reorganized the business, including the transfer of the equity interest in the
> Reorganized Debtor to a completely unrelated third party, One2One
> Holdings, LLC (the "Plan Sponsor"); appointed new board leadership that
> assumed control over the reorganized business, appointed a new Chairman

10

and hired a new Vice President of Finance & Administration; and
implemented many other transactions with third parties.

(One2One Mot. 2, *see also* 11-12).

Therefore, the Reorganized Debtor submits: "In short, there is no question that the

Plan has been substantially consummated within the meaning of the [Bankruptcy] Code.

When the Plan has been substantially consummated, there is a 'strong presumption of

mootness.'" (One2One Mot. 13) (quoting *Miami Ctr. Ltd. P'ship v. Bank of New York*,

838 F.2d 1547, 1555 (11th Cir. 1988)).

With regard to the latter, One2One argues that "courts avoid reopening

consummated chapter 11 plans where, as here, it would be 'difficult, time consuming,

and inequitable to unravel a plan of reorganization on the parties,' where the relief

requested would compel rewriting a plan or where reversal would force a successfully-

reorganized company back into bankruptcy." (One2One Mot. 13-14) (quoting *In re

Spansion*, 2011 U.S. Dist. LEXIS 86152, at *24-25, 28 (D.N.J. Aug. 4, 2011)) (citations

omitted). The parties do not dispute that Appellant in this case has requested the

Confirmation Order be reversed or vacated in its entirety and would require rescinding

the Plan. (One2One Mot. 14; One2One Reply 2).

On the other hand, Appellant argues that the Debtor's Plan has not been

substantially consummated because it "has not transferred all or substantially all of the

property proposed by the Plan to be transferred." (Quad Opp'n. 25). Quad focuses on

amounts paid to unsecured creditors and the fact that until the Seventh Circuit Appeal is

determined, the Debtor does not know how much each unsecured creditor will receive

under the Plan. (*Id.*). In other words, Quad argues that the Reorganized Debtor has not

11

*completed* distribution.  However, Quad does not dispute that the Reorganized Debtor has

undertaken a number of other actions pursuant to the Plan, including transferring

membership interests to the Plan Sponsor and security interest to unsecured creditors as

well as entering into new equipment leases and employment agreements.

In addition, Quad distinguishes this case from other cases where the reorganized

debtor issued publicly traded debt or securities.  (Quad Opp'n. 25-26).  Appellant argues

that in comparison, it would not be difficult to unscramble the Plan.  Nevertheless, it has

offered no options which would allow the Court to grant it relief without doing so

entirely.  *Compare In re: United Artists Theatre Co.,* 315 F.3d 217, 228 (3d Cir. 2003)

(refusing to dismiss bankruptcy appeal as equitably moot where the appeal, if successful,

would not result in unraveling of plan of reorganization, but instead, would result in the

court striking disputed liability releases from the plan) *and In re: Phila. Newspapers*, 960

F.2d at 170 (finding bankruptcy appeal was not equitably moot where "a ruling in favor

of the [Appellant] will not upset the Plan") *with Nordhoff.,* 258 F.3d at 189-90 (affirming

dismissal of appeal as equitably moot where granting of appeal would result in

unraveling of reorganization plan).  Accordingly, this factor weighs in favor of equitable

mootness.

b.  *Whether Appellant Obtained a Stay*

The Third Circuit has explained that this factor is largely duplicative of the first

"in the sense that a plan cannot be substantially consummated if the appellant has

successfully sought a stay."  *In re Phila. Newspapers*, 690 F.3d at 169 (quoting *Zenith*

*Elecs.*, 329 F.3d at 346 n. 4).  Accordingly, "this factor 'should only weigh heavily

against the appellant if, by a failure to secure a stay, a reorganization plan was confirmed, the existence of which is later threatened by the appellant's appeal." *Id*.

"[I]t 'is obligatory upon appellant . . . to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.'" *Nordhoff*, 258 F.3d at 186-87 (quoting *In re Highway Truck Drivers & Helpers Local Union No. 107*, 888 F.2d 293, 297 (3d Cir. 1989)).  With regard to this factor, Quad argues that "[t]here is no plausible argument that Appellant did not diligently pursue all of its remedies."  (Quad Opp'n. 29).  On the other hand, the Reorganized Debtor argues:

> This Court denied the Appellant's request for a stay pending appeal (and its subsequent attempt to obtain the equivalent of a stay through its motion for a preliminary injunction).  Having failed to obtain a stay of the Confirmation Order, the Plan now has been substantially consummated and, in reliance on the Confirmation Order and the expiration of all applicable stays, the Reorganized Debtor has engaged in many transaction that cannot be undone.

(One2One Mot. 3).  One2One also points to the fact that Appellant failed to post a bond and failed to offer to do so.  (*Id.* at 18).  However, the parties dispute the necessity of the bond requirement.

Here, Quad sought a stay from the Bankruptcy Court, which was denied.  Quad then filed an emergent application pursuant to Federal Rule of Bankruptcy Procedure 8005 seeking to temporarily stay Judge Winfield's Confirmation Order, and requesting that the Court order Appellees to show cause as to why a stay pending appeal should not issue.  However, Quad waited until the fourteenth and final day of the automatic stay pursuant to Bankruptcy Rule 3020(e).  This Court denied the application.  Thereafter,

Quad appealed that decision to the Third Circuit Court of Appeals.  The Third Circuit

dismissed the appeal for lack of jurisdiction, but noted: "Even if this Court did have

jurisdiction over this interlocutory appeal, the Motion would be denied based in

significant part on the reasons given by the District Court."  (CM/ECF No. 9).  Appellant

subsequently sought injunctive relief, which this Court denied.  (CM/ECF No. 20).

Accordingly, the parties do not dispute that although Quad sought a stay on multiple

occasions, it failed to obtain one.  However, in light of the attempts by Quad, this factor

carries little weight here.

c.   *Whether Relief Would Affect Third Parties Not Before the Court*

The third factor, "[h]igh on the list of prudential considerations," looks at the

extent to which the relief sought would adversely affect parties not before the Court.

*Continental I*, 91 F.3d at 562-63; *In re Phila. Newspapers*, 690 F.3d at 169.   In

opposition, Appellant argues that no third parties have relied on confirmation and "[t]he

Debtor does not explain how the relief requested on appeal would effect any third parties

that were not involved in the Bankruptcy Case.  If the Confirmation Order were reversed,

the Debtor would continue to operate its business as a debtor-in-possession in Chapter

11."  (Quad Opp'n. 32).  Appellant is correct in asserting that "[t]his is not a case where a

debtor issued publicly traded securities or debt pursuant to a plan that third parties to the

bankruptcy case could have purchased on the open market."  (Quad Opp'n. 33).

However, Quad does not address One2One's argument that unraveling the Plan would

call into question the continued viability of One2One.

One2One asserts that

numerous parties not before this Court, including creditors who received distributions, a third-party investor, *i.e.*, the Plan Sponsor who now holds the newly-issued membership interest in the Reorganized Debtor, the Reorganized Debtor's new customers, vendors and employees, and other parties, have acted in reliance on the confirmed Plan and the Bankruptcy Orders since the Effective Date.

(One2One Mot. 3, *see also* 19-23).  Accordingly, Appellee submits that "[t]he reversal and rescission sought by the Appellant would, even if feasible, impair the rights of those third parties and be highly inequitable."  (*Id.*).

Although the extent of the potential affect is less than cases where public shares have been issued or substantial financing obtained, this factor weighs in favor of One2One as well.  Indeed, One2One argues that the relief Appellant seeks would unravel the Plan in its entirely and call into question the continued viability of One2One to the detriment of third parties.

### d. Effect on Success of the Plan

Fourth, a court considers whether the relief requested would affect the success of the plan.  This factor "largely replicates the analysis of the first in that it considers whether granting the appellant the requested relief would unravel the plan."  *In re Phila. Newspapers*, 690 F.3d at 169.  The Appellee argues:

> [T]he relief requested by the Appellant would substantially undermine, and indisputably unravel, the key elements of the Plan, including the integral New Money Investment (as defined in the Plan Support Agreement) and other resolutions embodied in the Plan, which are the product of arm's-length negotiations and compromise between and among the Plan Sponsor, the Debtor, the Official Committee of Unsecured Creditors (the "Committee") and the former principals of One2One, who, in settlement of various claims that the estate potentially had against them to effectuate the transactions in the Plan, waived substantial claims they had against the estate.

15

(One2One Mot. 4).     Notably, Appellant does not address this factor or

Appellee's argument.  Accordingly, this factor weighs in favor of a finding of

equitable mootness.

   *e. Public Policy*

   Finally, a court considers the public policy of affording finality to bankruptcy

judgments.  "[T]he fifth factor supports the other four by encouraging investors and

others to rely on confirmation orders, thereby facilitating successful reorganizations by

fostering confidence in the finality of confirmed plans."  *In re Phila. Newspapers*, 690

F.3d at 169 (citing *Continental I*, 91 F.3d at 565) ("[T]he importance of allowing

approved reorganizations to go forward in reliance on bankruptcy court confirmation

orders may be the central animating force behind the equitable mootness doctrine.").

With regard to this factor, Appellee argues that dismissal "would serve the strong public

interest in encouraging reliance on confirmation orders and finality in chapter 11 cases . .

. ."  (One2One Mot. 4).  They contend that this is particularly so in this case because the

company "operat[es] in an uncertain and volatile industry with a small and unpredictable

client base that relies on the Reorganized Debtor for their own income stream."  (*Id.*).

Appellant argues that the policy of affording finality to bankruptcy judgments should not

trump the policy of preserving a party's right to appeal.  In light of the fact that the Court

has already determined that allowing the appeal to proceed would affect the rights of

third parties not presently before this Court, and would completely unscramble the Plan

despite its substantial consummation, the final factor weighs in favor of a finding of

equitable mootness.

### D.  Whether the Releases are Severable

Quad next argues that the doctrine of equitable mootness does not preclude review on appeal of severable plan provisions, such as the releases and injunctions in the Debtor's Plan.  (Quad Opp'n. 22).  In Reply, One2One argues that "[a]s numerous courts have recognized, stripping away releases granted in favor of the parties under a plan is a remedy that cannot be accomplished without unraveling the plan.  Appellate courts simply have no authority to remove or modify critical elements of a voluntary compromise under a plan while leaving other aspects intact."  (One2One Reply 8).  Further, One2One submits that Appellant ignores many cases which establish that the "one-sided relief proposed by Appellant is something an appellate court is without power to order."  (One2One Reply 9-11).

With regard to the Plan before the Court, Appellee argues: "Here, striking the releases – which are indisputably limited in nature and indeed expressly exclude Appellant's pursuit of Mr. Heverly – cannot possibly be implemented without unraveling the entire Plan and the Bankruptcy Court concluded that the releases were integral to the Plan."  (One2One2 Reply 8-9) (citing Feb. 25 Tr. at 33:13-24 to 34:1; Feb. 15 Tr. at 168:2-16).  Appellant does not address the specifics of the Plan at issue in this case.  Accordingly, even if the Court had the power to order the relief Appellant seeks, Quad does not explain what impact that would have on the Plan or the feasibility of doing so in this case in light of the Plan provisions as a whole.  Therefore, particularly in light of the Bankruptcy Court's findings that the releases here were "necessary for reorganization," the Court declines to treat them as severable.

17

**IV. CONCLUSION**

On balance, the prudential factors set forth by the Third Circuit weigh in favor of equitable mootness in this case.  Accordingly, the Court grants One2One's motion to dismiss the instant bankruptcy appeal.

An appropriate Order accompanies this Opinion.


Dated: 7.23.2013

s/ Jose L. Linares
Jose L. Linares
United States District Judge
