NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>ONE2ONE COMMUNICATIONS, LLC,<br><br>Debtor | Case No. 12-27311<br><br>Chapter 11 |
| QUAD/GRAPHICS, INC.<br><br>Appellant,<br><br>v.<br><br>ONE2ONE COMMUNICATIONS, LLC,<br><br>Appellee. | Bankruptcy Appeal<br><br>Civil Action No. 13-1675 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of an appeal by Quad/Graphics Inc. ("Quad" or "Appellant") of United States Bankruptcy Judge Novalyn Winfield's March 5, 2013 Order confirming the Debtor One2One Communications, LLC ("Debtor" or "One2One" or "Appellee")'s Fourth Amended Chapter 11 Plan of Reorganization. The limited question before this Court is whether the Bankruptcy Court erred as a matter of law and/or fact in approving third party releases and injunctions in the Plan and Order as it relates to the Debtor's claims against insiders. The Court has considered the parties' submissions and heard oral argument on May 26, 2016. For the reasons set forth below, the Court finds that the Bankruptcy Court erred as a matter of law in approving the releases and hereby remands for further analysis.

## BACKGROUND

As elaborated by the Third Circuit,[1] Debtor One2One, a billing services technology company, is a limited liability business, and its sole member is Joli, Inc.  Joanne Heverly owns seventy-five percent of Joli, Inc., and Richard Brammer, a former officer of the Debtor, owns the remaining twenty-five percent.

Appellant Quad, a printing company, holds the single largest claim against the Debtor and the Debtor's CEO, Bruce Heverly, husband of Joanne Heverly, for $9,359,630.91, which stems from a (since-affirmed) judgment entered in the District Court for the Eastern District of Wisconsin.[2]  The Debtor's unsecured claims, not including Appellant's claim, total less than $1.3 million.

Shortly after the jury in Wisconsin awarded the $9m verdict against it, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), in the Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").  Thereafter, the Office of the United States Trustee formed an official unsecured creditors committee (the "Committee") consisting of Appellant, Ricoh Production Print Solutions, LLC, and Enterprise Group.

### A.  Relevant Bankruptcy Court Proceedings

Between September 2012 and January 2014, the Debtor filed the First, Second, and Third Amended Plans of Reorganization, which were denied. After the Bankruptcy Court denied confirmation of the First Amended Plan of Reorganization, Bela Szigethy ("Szigethy") agreed to

---

[1] *In re One2One Commc'ns, LLC*, 805 F.3d 428 (3d Cir. 2015).
[2] *See Quad/Graphics, Inc. v. One2One Commc'ns, LLC*, 529 F. App'x 784, 793 (7th Cir. 2013).

2

make an investment in the Debtor.[3]  The Debtor filed a Fourth Amended Plan of Reorganization (the "Plan") on January 25, 2013, under which a third-party, One2One Holdings, LLC ("Plan Sponsor") would acquire a membership interest in the Debtor.  In part, the Plan incorporated a Plan Support Agreement which provided the Plan Sponsor with the exclusive right to purchase 100% of the Debtor's equity for $200,000.

Most relevant to this appeal are the releases of Debtor's claims against non-debtors in the Plan.  The Fourth Amended Disclosure Statement states as follows:

> Based upon negotiations with the Creditors' Committee, the Debtor has agreed not to pursue any preferential or other avoidance claims against any unsecured creditor.  No claims shall be pursued against any principal, director, officer, shareholder, or employee of the Debtor.  This determination was made by the Debtor and Creditors' Committee based upon the value of the claims, the cost to pursue the claims, the likelihood of success in pursuing the claims, and the ability to collect if the claim was successfully pursued.

(*See* ECF No. 33-14, Fourth Amended Disclosure Statement at 19-20.)[4]  Sziegethy stated in his affidavit that "it is critical that the Reorganized Debtor and the Plan Sponsor be able to operate the business of the Reorganized Debtor free and clear of all liens, claims, encumbrances, and interests of any kind or nature whatsoever" and further stated that the "Plan Sponsor would not have entered into the Plan Support Agreement and will not consummate the transactions contemplated thereby, if the Reorganized Debtor or the Plan Sponsor would, or in the future could, be liable for any claims against the Debtor or its estate or for any liabilities or obligation of the Debtor or its estate to the extent being discharged under the Plan."  (No. 12-27311-NLW, ECF No. 226 ¶ 10.)

---

[3] Sziegethy is the founder, co-owner, and Co-CEO of The Riverside Company, a global private equity firm holding over $3 billion in assets.

[4] Additionally, the Fourth Amended Disclosure Statement and the Plan both note that the Heverlys "waive any dividend or distribution under the Plan."  (*See id.* at 26 n.21.)

Sziegethy further testified that he was aware that the Debtor would not pursue avoidance actions against insiders. (*See* Feb. 13, 2013 Tr. 45:24 to 48:21.)

Quad objected to approval of the Plan based in part on these releases. Quad argued that the Debtor had failed to properly quantify the value of the releases, and merely made a conclusory determination not to pursue actions against insiders based on costs to pursue the claims, the likelihood of success in pursuing the claims, and the ability to collect. (*See* No. 12-73111-NLW, ECF No. 235 at 30 (Bankr. D.N.J.); *see also* Feb. 22, 2013 Tr. at 115:23 to 120:5.) In contrast, Quad's expert assigned these actions a recovery value of $560,000. (*See* ECF No. 30-13, CQ-117, Supplemental Forensic Accounting Report.) Accordingly, Quad offered to purchase the claims from the estate for $5,000—and eventually increased the offer to $20,000. (*See* No. 12-73111-NLW, ECF Nos. 234, 246.) The offers were not accepted.

The Bankruptcy Court held a five-day confirmation hearing during which the releases were discussed. (*See, e .g.*, Feb. 14, 2013 Tr. at 227:6 to 234:25; Feb. 15, 2013 Tr. at 123:25 to 124:9, 135:7 to 136:2, 152:24 to 153:15, 155:25 to 158:10, 167:18 to 168:12; Feb. 22, 2013 Tr. at 99:15 to 100:23, 115:23 to 120:5; Feb. 25, 2013 Tr. at 21:10 to 22:13, 33:2 to 34:5.)

On March 5, 2013, over Quad's objection, Bankruptcy Judge Winfield entered an order confirming the Plan (*see* ECF No. 1-3 at 10-21 (the "Confirmation Order")), and released the Debtor's claims against non-debtors as follows:

> 19.  No avoidance actions pursuant to 11 U.S.C. §§ 544-550 shall be pursued against insiders or non-insiders.

> \*        \*        \*

> 23.  Without otherwise limiting the exculpation and release provisions of the Plan and subject to paragraph 31 of this Order,[5]

---

[5] The Court notes that the Confirmation Order does not contain a "paragraph 31."

and as set forth in the Disclosure Statement, all avoidance actions and derivative claims of any kind or nature, vested in the Debtor prior to the Effective Date of the plan, including without limitation, claims against third parties pursuant to (i) Section 544 through 550 of the Bankruptcy Code and (ii) any other theory of law whether statutory or common law (collectively, the "Causes of Action"), shall upon the Effective Date of the Plan be released.

24.    Notwithstanding anything in the Plan or this Order to the contrary, Sub-Section IV. A. of the Plan, titled "Release of Claims" as it relates to any person other than the Debtor, the Reorganized Debtor and the Plan Sponsor shall only apply to avoidance actions or other derivative claims and causes of actions of the Debtor against such persons; any further release of any such person is hereby deemed stricken from the Plan.

(Confirmation Order at 11-12, ¶¶ 19, 23, 24.)

Pertinent to this appeal, Bankruptcy Judge Winfield held on the record that, with respect to a liquidation analysis, value of the released claims had been overestimated by Quad's expert (Feb. 25, 2013 Tr. at 21:10 to 22:13), and that the release language satisfied the applicable standard under *Gilman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203 (3d Cir. 2000):

With regard to the relief [sic – release] provisions in the [P]lan, I find that they do not run afoul of the criteria outlined in [*in re Continental Airlines*] . . . [although] the language of the release provision [is] somewhat perplexing. To that extent, I queried [Debtor's counsel], [and] he identified for the Court that [the release] was only intended to release the parties from the preferential transfers and other avoidance actions.  He most emphatically emphasized that it was not intended to release Bruce Heverly from any aspects of the Quad judgment against him. I find the limited scope of the release, the fact that the avoidance actions would be directed largely at management. And by that I mean not only just the Heverlys, but some of the other parties who continue to operate and manage the debtor would, I think, significantly impair their ability to devote full-time to the management responsibilities of the debtor. So, I find that limited release necessary for reorganization.

(*Id.* at 33:2-25 to 34:1-5.)

5

**B. Relevant Proceedings in This Court**

On March 19, 2013, Appellant filed an appeal in this Court. The parties briefed the merits of the appeal, but this Court never reached those issues, as it granted the Debtor's motion to dismiss the appeal as equitably moot on July 24, 2013. (*See* ECF Nos. 48, 49.) On July 21, 2015, the Third Circuit remanded, concluding that this Court had abused its discretion in finding the appeal equitably moot. (*See* ECF No. 53.)

Upon remand by the Third Circuit, this Court reopened this Bankruptcy Appeal on August 12, 2015. (ECF No. 54.) The parties thereafter requested multiple adjournments of status conferences in order to pursue settlement discussions. (*See* ECF Nos. 55, 56, 58, 59, 60.)

Via letter dated March 29, 2016, the parties advised that they "have agreed to limit the issues on appeal to whether the Bankruptcy Court erred as a matter of law and/or fact in approving third party releases and injunctions in the Plan and Order as it relates to the Debtor's claims against insiders." (ECF No. 61.) In addition, the parties advised that "Appellant has further agreed to limit the relief sought on appeal to reversing the Bankruptcy Court's approval of the releases and injunctions as to Debtor's claims against insiders and have these provisions invalidated rather than requesting that the Confirmation Order be reversed in its entirety." (*Id.*) The parties directed the Court to the relevant portions of the 2013 Appeal Briefs in order to decide the issue. (*Id.*)

On April 28, 2016, the Court set oral argument for Thursday, May 12, 2016. (ECF No. 64.) At the request of One2One, on May 4, 2016, the Court adjourned oral argument to Thursday, May 26, 2016. (ECF No. 66.)

On May 17, 2016, One2One filed a motion to admit Michael M. Schmahl *pro-hac vice*. (ECF No. 67.)

On May 20, 2013, One2One filed a motion for leave to file a supplemental brief. (ECF No. 68.)   The motion was filed by Cole Schotz, One2One's counsel of record, and included a supplemental brief prepared by Mr. Schmahl. (*Id.*)   According to One2One, the supplemental brief is necessary because "the briefs previously submitted [*i.e.,* the Appeal Briefs filed in 2013] do not cite the correct standard for considering the release at issue in this appeal." (*Id.*)

On May 25, 2016, Quad objected to both the *pro hac vice* motion as well as the motion for leave to file a supplemental brief. (ECF No. 71.)   According to Quad, when Mr. Schmahl filed the proposed supplemental brief, he "did not disclose to the Court that the parties had explicitly agreed as part of the settlement that the parties would not file any additional briefs." (*Id.* at 2.)   Quad therefore requested that the Court deny both the motion for leave to file a supplemental brief and the motion for *pro hac vice* admission of Mr. Schmahl, and further requested that the Court award costs and sanctions in Quad's favor as a result of having to expend resources that the parties agreed would not be spent. (*Id.*)

The Court admitted Mr. Schmahl *pro hac vice*. (ECF No. 73.)   During the May 26th oral argument, the Court denied One2One's motion for motion for leave to file a supplemental brief, and reserved on Quad's request for sanctions,[6] in addition to reserving on the ultimate issue presented: whether the Bankruptcy Court erred as a matter of law and/or fact in approving third party releases and injunctions in the Plan and Order as it relates to the Debtor's claims against insiders. (*See generally* May 26, 2016 Tr.)   The matter is now ripe for adjudication.

---

[6] After consideration, the Court hereby concludes that sanctions are not warranted.

**LEGAL STANDARD**

District courts have jurisdiction over appeals from decisions of bankruptcy judges under 28 U.S.C. § 158(a). Bankruptcy Rule 8013 states that a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bank. P. 8013. This Court "review[s] the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (citations and internal quotation marks omitted). A factual finding is clearly erroneous where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cellnet Data Systems, Inc.*, 327 F.3d 242, 244 (3d Cir.2003).

**ANALYSIS**

**A. Release of Claims Against Non-Debtors**

Courts must scrutinize plans of reorganization under the Bankruptcy Code which purport to release claims against non-debtors. Section 524(e) of the Bankruptcy Code states that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for such debt" and thus appears to create a specific prohibition on discharging non-debtor liabilities. 11 U.S.C. § 524(e). Yet, under Section 1123(b)(3)(A), a plan of reorganization "may provide for the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." *Id.* (internal punctuation omitted).

"Where a compromise is part of a plan of reorganization, however, the court has the duty 'to determine that a proposed compromise forming part of a reorganization plan is fair and

8

equitable.'" *In re Coram Healthcare Corp.*, 315 B.R. 321, 334 (Bankr. D. Del. 2004) (quoting

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414,

424 (1968)).[7]   Furthermore, "[w]here releases are granted to non-debtors under a plan of

reorganization, additional factors are often relevant to determine the fairness of the compromise."

*Id.* (citing *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 212-14 (3d.

Cir. 2000); *In re Genesis Health Ventures, Inc.* 266 B.R. 591, 608 (Bankr. D. Del. 2001); *In re

Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999)); *see also In re Washington Mut.,

Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011) ("Determining the fairness of a plan which includes

the releases of non-debtors requires the consideration of numerous factors and the conclusion is

often dictated by the specific facts of the case.") (citing same).

The first and foremost fact for the court to consider is the scope of the release.   "In

evaluating releases, courts distinguish between the debtor's release of non-debtors and third

parties' release of non-debtors."   *In re Washington Mut., Inc.*, 442 B.R. 314, 352 (Bankr. D. Del.

2011) (citing *In re Exide Techs.*, 303 B.R. 48, 71-74 (Bankr. D. Del. 2003)).   In short, courts use

"different analyses to evaluate releases by a debtor of non-debtor third parties and releases by a

non-debtor of other non-debtor third parties." *Id.*[8]

---

[7] "The standards for approval of a settlement under section 1123 are generally the same as those under Rule 9019,
though the court should consider all factors relevant to a "full and fair assessment of the wisdom of the proposed
compromise." *Id.*   Under Bankruptcy Rule 9019, a bankruptcy judge has the authority to approve a compromise or
settlement of a claim. Fed. R. Bankr. P. 9019.   In determining whether to approve a compromise or settlement of a
claim under Rule 9019, the bankruptcy judge must "assess and balance the value of the claim that is being
compromised against the value to the estate of the acceptance of the compromise proposal," and in particular should
consider: (i) the probability of success in the litigation; (ii) the likely difficulties in collection; (iii) the complexity of
the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount
interest of creditors. *See Martin v. Myers (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citing *Protective Committee
Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968)); *see also In re G-I Holdings Inc.*,
420 B.R. 216, 256 (D.N.J. 2009) (applying the *Martin* factors to section 1123(b)(3)(A) release under Rule 9019).
[8] The seminal Third Circuit case on non-consensual releases of non-debtor claims against other non-debtor third parties
is *Continental Airlines*, in which the Third Circuit discussed "the validity of provisions in chapter 11 plans of
reorganization releasing and permanently enjoining third party actions against non-debtors"—specifically, language

Where, as here, the releases pertain only to the debtor's claims against non-debtors, courts

in the Third Circuit generally consider five factors:

> (1) an identity of interest between the debtor and non-debtor such that a
> suit against the non-debtor will deplete the estate's resources;
>
> (2) a substantial contribution to the plan by the non-debtor;
>
> (3) the necessity of the release to the reorganization;
>
> (4) the overwhelming acceptance of the plan and release by creditors
> and interest holders; and
>
> (5) the payment of all or substantially all of the creditors and interest
> holders under the plan.

See *Zenith*, 241 B.R. at 110 (citing *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 937

(Bankr. W.D. Mo. 1994)); *see also Washington Mut.*, 442 B.R. at 346 (applying same standard);

*In re Indianapolis Downs, LLC.*, 486 B.R. 286, 303 (Bankr. D. Del. 2013) (applying same

standard).

These factors, however, are "neither exclusive nor conjunctive requirements[.]"

*Washington Mut.*, 442 B.R. at 346 (citing *Master Mortgage*, 168 B.R. at 935). Nor are they

---

which "released and permanently enjoined [third-party] shareholder lawsuits against certain of Continental Airlines' present and former directors and officers who were not themselves in bankruptcy." 203 F.3d at 205, 211. The Third Circuit recognized a circuit split on the issue, and concluded that it could rule on the releases before it without having to affirmatively decide the validity of such provisions in general: "Because the release and permanent injunction before us are so clearly invalid under any standard, we need not speculate on whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for fair consideration." *Id.* at 214 n.11. The court reasoned that under any rule that it might adopt, the releases at issue were impermissible because the "hallmarks of permissible non-consensual releases—fairness, necessity to the reorganization, and specific factual findings to support these conclusions" were all absent. *Id.* (Subsequently, the Third Circuit further clarified that "fair consideration" was also a "requirement." *See United Artists Theatre Co. v. Walton*, 315 F.3d 217, 227 (3d Cir. 2003) (quoting *In re Continental*, 203 F.3d at 215).) In the wake of *Continental* and its ilk, it remains unresolved in the Third Circuit whether a court has the authority to grant non-consensual releases of non-debtor claims against other non-debtor third-parties. *Compare Washington Mut.*, 442 B.R. at 352 (concluding that any release of third-party claims against non-debtor "must be based on consent of the releasing party"), *with In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 715 (Bankr. D. Del. 2016) (in opinion certifying issue for appeal, the court noted that it had concluded in a prior opinion that courts could approve non-consensual third-party releases).

10

binding. *See In re W.R. Grace & Co.,* 475 B.R. 34, 107 n.69 (D. Del. 2012) (noting that since *Zenith* was a lower court decision, it is not binding on the district court). Nevertheless, they "provide guidance in the Court's determination of fairness," *Washington Mut.*, 442 B.R. at 346 (citing *Master Mortgage*, 168 B.R. at 935), and "are helpful in weighing the equities of the particular case after a fact-specific review." *Indianapolis Downs*, 486 B.R. at 303 (citing *Master Mortgage*, 168 B.R. at 935). Indeed, the *Washington Mutual* Court found that because the Third Circuit in *Continental* "refused to articulate a test for when releases by Debtors are appropriate in the chapter 11 context[,] . . . the factors articulated in *Master Mortgage* [and adopted by *Zenith*] form the foundation for such an analysis, with due consideration of other factors that may be relevant to [the particular] case." *Washington Mut.*, 442 B.R. at 346-47.

### B. The Bankruptcy Court Erred by Failing to Analyze the Non-Debtor's Contribution With Respect to the Debtor's Release of Claims

Here, under the Plan approved by the Bankruptcy Court, the Debtor released its claims against non-debtors. In particular, the Confirmation Order states that "No avoidance actions pursuant to 11 U.S.C. §§ 544-550 shall be pursued against insiders or non-insiders" (¶ 19), and that "as set forth in the Disclosure Statement, all avoidance actions and derivative claims of any kind or nature" belonging the Debtor "shall be released" upon confirmation of the Plan (¶ 23). The Disclosure Statement, in turn, states that avoidance actions will not be pursued "[b]ased upon negotiations with the Creditors' Committee . . . based upon the value of the claims, the cost to pursue the claims, the likelihood of success in pursuing the claims, and the ability to collect if the claim was successfully pursued." (Fourth Amended Disclosure Statement at 19.)

The Bankruptcy Court approved the releases via oral opinion:

> With regard to the relief [sic – release] provisions in the [P]lan, I
> find that they do not run afoul of the criteria outlined in [*in re
> Continental Airlines*] . . . [although] the language of the release
> provision [is] somewhat perplexing.  To that extent, I queried
> [Debtor's counsel], [and] he identified for the Court that [the
> release] was only intended to release the parties from the preferential
> transfers and other avoidance actions.   He most emphatically
> emphasized that it was not intended to release Bruce Heverly from
> any aspects of the Quad judgment against him.  I find the limited
> scope of the release, the fact that the avoidance actions would be
> directed largely at management.  And by that I mean not only just
> the Heverlys, but some of the other parties who continue to operate
> and manage the debtor would, I think, significantly impair their
> ability to devote full-time to the management responsibilities of the
> debtor.  So, I find that limited release necessary for reorganization.

(Feb. 25, 2013 Tr. at 33:2-25 to 34:1-5.)  The Bankruptcy Court also determined that, in the context

of a liquidation analysis, the value of the released claims had been "overestimated." (*Id.* at 21:10

to 22:13.)

The Court concludes that the Bankruptcy Court erred as a matter of law in approving the

releases by failing to analyze the contribution made by the non-debtors to the Plan in exchange for

the releases.

As an initial matter, the Court notes that the Bankruptcy Court applied *Continental* in ruling

on the releases, and the parties briefed the appeal citing primarily to *Continental*.  It is not clear

whether *Continental* applies, because the Third Circuit did not articulate a test, and furthermore,

at issue were non-consensual releases of non-debtor claims against other non-debtors third-parties,

whereas the issue before this Court pertains only to the release of Debtor's claims against non-

debtors.  Even assuming that the *Continental* applies, entirely absent from the Bankruptcy Court's

decision is a discussion of consideration.   It is clear, however, that under the *Continental* line of

cases, "fair consideration" is a "requirement" for the courts to consider. *See United Artists Theatre Co. v. Walton*, 315 F.3d 217, 227 (3d Cir. 2003) (quoting *In re Continental*, 203 F.3d at 215).)

The Court finds that that *Zenith* is the more appropriate guidepost. *See Washington Mut.*, 442 B.R. at 346-47 (concluding same). Under the second *Zenith* factor, the court should examine whether the non-debtor parties benefitting from the release have made a substantial contribution to the debtor's reorganization. *See Zenith*, 241 B.R. at 110; *see* discussion *infra*. The Bankruptcy Court failed to engage in such analysis. Even though the *Zenith* factors are not binding, the Court finds that an analysis of the contributions made by non-debtors is appropriate given the facts of this case. *See In re Exide Techs.*, 303 B.R. 48, 73 (Bankr. D. Del. 2003) ("To determine whether the release [of a debtor's claims against non-debtors] is fair, it is appropriate to consider the *Zenith* factors to determine whether the equities weigh in favor of approval.").

The Debtor, as part of their liquidation analysis, assigned a recovery value of zero to the claims (*see* Plan, Ex. C), whereas Quad's expert assigned a recovery value of $566,000. (*See* ECF No. 30-13, CQ-117.) Quad's expert identified potential claims against certain insiders (including Bruce Heverly, Richard Brammer, and Amie and Joe Desanzo) and other third parties (such as AHC,[9] BMW Financial, and FIA Card Services). (*Id.*) Quad offered to purchase the claims from the estate for $5,000, and eventually increased the offer to $20,000, but the offers were not accepted. (*See* No. 12-73111-NLW, ECF Nos. 234, 246.) In light of the fact that the Debtor turned down Quad's offer to purchase these allegedly valueless claims (foregoing additional money for creditors), the Bankruptcy Court should have analyzed what contributions were made by the non-debtors in exchange for the releases. *See Zenith*, 241 B.R. at 111 (discussing separately the

---

[9] AHC is an entity owned by Joli, Inc. As noted, Joli Inc. is 75% owned by Joann Heverly.

13

contribution made by the released non-debtors); *see also In re 710 Long Ridge Rd. Operating Co., II, LLC*, No. 13-13653, 2014 WL 886433, at *14 (Bankr. D.N.J. Mar. 5, 2014) ("Clearly, the Court must undergo an analysis of each of the Releasees to determine validity.").

An analysis of "substantial contribution" is necessarily fact-specific.  For example, in *Zenith*, the court found that the officers and directors provided a substantial contribution to the reorganization "by designing and implementing the operational restructuring and negotiating the financial restructuring."  *Zenith*, 241 B.R. at 111.  In contrast, the court in *Genesis Health* concluded that even where "the officers and directors of the debtors no doubt made meaningful contribution to the reorganization by designing and implementing the operational restructuring of the companies, and negotiating the financial restructuring with parties in interest," there had been "no showing" of substantial contribution because the officers and directors had "been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of 'assets' to the reorganization."  *Genesis Health*, 266 B.R. at 606-07. Furthermore, in *Indianapolis Downs*, the Bankruptcy Court concluded that a non-debtor benefitting from the release had made substantial contribution where the record reflected that he had "continued performing services for the Debtors post-petition without receiving compensation" and where the release further allowed the non-debtor "to continue performing such services for the Debtors."  486 B.R. at 304.

Additionally, substantial contribution was found in *In re Coram Healthcare Corp.* where the released non-debtor contributed $56 million to the Plan funding, 315 B.R. 321, 335 (Bankr. D. Del. 2004), and also in *Washington Mutual*, where the released non-debtors "made a substantial contribution to the Plan by waiving claims they had asserted against numerous assets of the

Debtors . . . and by waiving the proofs of claim they have filed which the Debtors have estimated to be in excess of $54 billion." 442 B.R. at 347. The *Washington Mutual* Court reasoned that: "These waivers are not simply significant in total dollars but also in comparison to the total claims against the estate; they are clearly the largest claims. Further, the claims being waived do not simply reduce the claims against the Debtors' estate; they permit the use of property of the estate free of competing claims to ownership." *Id.*

Here, in its appeal brief, the Debtor argues that "the waiver of claims by the Heverlys against the estate and the Plan Sponsor's funding contribution provided more than sufficient consideration for the release." (*See* ECF No. 32 at 33). Quad disagrees. (*See* ECF No. 46 at 4 n.3.) At this time, the Court has no formal opinion on whether the released non-debtors made substantial contribution to the Plan, but notes that the funding of the Plan was limited to the Plan Sponsor, and that even though the Heverlys waived claims against the estate, they were also rehired by the reorganized Debtor with a combined salary of $300,000.

At this point, the Court merely holds that the Bankruptcy Court erred as a matter of law in failing to analyze the contributions made to the Plan by the released non-debtors. The releases are deemed invalid, but the Court will remand for the Bankruptcy Court to consider the issue, reemphasizing that it is appropriate to analyze each of the released non-debtors. *See 710 Long Ridge*, 2014 WL 886433, at *14 ("Clearly, the Court must undergo an analysis of each of the Releasees to determine validity.")

15

## CONCLUSION

For the reasons above, the Court hereby invalidates the approval of the releases, and will remand the matter to the Bankruptcy Court for further analysis.  The Court further denies the request for sanctions.  An appropriate Order accompanies this Opinion.


DATED: June _13_, 2016

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE